UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

K.F., by and through KEVIN
FINDLEY and MARIAN FINDLEY,
as parents and natural guardians,
and KEVIN FINDLEY and MARIAN
FINDLEY, individually,

        Plaintiffs,

    -vs-

SCHOOL BOARD OF LAKE
COUNTY, FLORIDA, THOMAS
HICKMAN and ELIZABETH
DOUGLAS.

        Defendants.

CASE NO.:

## COMPLAINT

PLAINTIFFS, K.F., a minor boy, by and through KEVIN FINDLEY and MARIAN FINDLEY as parents and natural guardians, and KEVIN FINDLEY and MARIAN FINDLEY, individually, hereby sues DEFENDANT, SCHOOL BOARD OF LAKE COUNTY, FLORIDA, THOMAS HICKMAN, and ELIZABETH DOUGLAS and states the following:

## INTRODUCTION

1.    During February and March of 2021, Defendant Hickman, an employee of the Lake County School District, and Defendant Douglas, an administrative employee of the Lake County School District, physically abused

and humiliated K.F., a 6-year-old kindergarten student at the school.

2.     During these two months, Defendant Douglas dragged K.F. on the ground in violation of school policy.

3.     During these two months, Defendant Hickman lifted K.F. off the ground by the back of his pants and carried him in what he mockingly referred to as the "superman carry" on at least three (3) occasions, also in violation of school policy.

4.     On or about March 9, 2021, Defendant Hickman maliciously mocked the kindergartener further by sending co-worker, Jerome Scott, a text stating that he performed the "superman carry" on K.F. and that it gave him "a really good wedgy."

5.     On or about March 10, 2021, Defendant Hickman grabbed K.F. by his backpack while the student was wearing it and pulled him backwards, causing the student to stumble.

6.     Defendant Douglas was aware of what Defendant Hickman was doing to K.F. and did nothing to reprimand, deter, or report the matter.

7.     These incidents were reported to Dr. Tiffany Scott, the principal by Jerome Scott after he received the text.

8.     An investigation commenced due to Douglas and Hickman's abusive conduct towards K.F.

9.     At the conclusion of this investigation, it was concluded that

Defendant Hickman was guilty of violating School Board Policy when he lifted K.F. off of the ground by the back of his pants and carried him down the hall multiple times on March 8, 2021.

10.    The investigation also found that Defendant Hickman had "used the same practice on two prior occasions with the same student" and that it had "placed the student at potential physical and emotional risk."

11.    It was concluded that Defendant Douglas was also guilty of violating School Board Policy for her treatment of K.F., as well as having seen Defendant Hickman's conduct and allowing it to continue.

12.    At the conclusion of the investigation, Defendant Hickman was permitted to resign, Defendant Douglas maintained employment, and K.F. was given no options to provide him education free from the hostile environment these assaults created for him.

## PARTIES

### A. Plaintiffs

13.    K.F. is a resident of Florida and is not *sui juris* by virtue of his minority.  At all relevant times, K.F. was six years old and a kindergarten student at Eustis Heights Elementary School ("EHES").

14.    This action is brought anonymously to protect the identity of K.F. as this matter concerns the assault of a minor.

15.    K.F.'S right to privacy and personal security outweigh the public

interest in knowing his identification.

16.    It is in the public's interest to give anonymity to child abuse survivors so that other victims will feel the ability to come forward and not be fearful that their identity will be publicized.

17.    K.F.'S minority and legitimate concerns for privacy outweigh any prejudice to Defendants or the public by allowing Plaintiff to proceed anonymously.

18.    KEVIN FINDLEY and MARIAN FINDLEY, individually, and as natural guardians and parents of K.F., are residents of Lake County, Florida, are over the age of 18, and are otherwise *sui juris*.

**B. Defendants**

19.    Defendant, the School Board of Lake County, Florida ("School Board"), is a political subdivision or agency of Lake County, Florida. The School Board operates and maintains EHES in Lake County, Florida.  K.F. was a student at EHES at all relevant times.

20.    Defendant Thomas Hickman (hereinafter, "Hickman") is a resident of Florida and is *sui juris*.  At all relevant times, he was employed by School Board as a school safety guardian at EHES.

21.    Defendant Elizabeth Douglas (hereinafter, "Douglas") is a resident of Florida and is *sui juris*.  At all relevant times, she was employed by School Board as a dean at EHES.

## JURISDICTION AND VENUE

22.     The court has federal question subject matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367, 42 U.S.C. § 1983 and 20 U.S.C. § 1681(a).

23.     The Court has venue of this action under 28 U.S.C. § 1391 as the Defendant is located in this District and a substantial part of the events and omissions giving rise to the claim occurred in this District.

24.     This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because all the other claims are related to the claims with original jurisdiction and form part of the same case or controversy.

25.     All conditions precedent to bringing the state law claims in this lawsuit have been satisfied and/or waived. On or about June 30, 2021, Plaintiffs served a letter pursuant to § 768.28, Florida Statutes, to School Board of Lake County, formally advising the School Board as to Plaintiffs' negligence claim arising from the assaults described in the lawsuit. The statutory waiting period for Plaintiffs to assert a negligence claim against the School Board of Lake County has since expired.

## FACTUAL ALLEGATIONS

26.     At all relevant times to this lawsuit, K.F. attended kindergarten at EHES.

27.     At all relevant times to this lawsuit, Defendant Hickman was

employed by the Lake County School District and worked at EHES as a school safety guardian.

### *Assault and Battery & Actual Notice to School Officials of a Severe Risk to Safety of K.F., a Student*

28.    Defendant Douglas was deemed to be one of the primary administrators at EHES that addressed behavioral concerns involving students.

29.    Defendant Hickman would often be asked to transport children to the office to meet with Defendant Douglas when they refused to walk, dropped to the ground, or made bringing them to the office difficult.

30.    The School Board has policies that govern how a School Board employee is to interact with students and transport a student to the office.

31.    On or about February 18, 2021, in the morning, Defendant Hickman was asked to transport K.F. for or with Defendant Douglas. Defendant Hickman picked up K.F. by the back of his pants or underpants, lifted him off the ground so that his arms and legs were extended, and carried him to Defendant Douglas' office.

32.    On or about February 23, 2021, in the morning, Defendant Douglas was responding to a call to address an issue involving K.F.  As Defendant Douglas was attempting to escort K.F. to her office, K.F. dropped to his knees. Despite knowing this was not the proper procedure, Defendant Douglas

dragged him up a staircase on his knees by pulling on his arm or wrist.

33.   On or about February 25, 2021 in the morning, Defendant Hickman was asked to transport K.F.  Defendant Hickman picked up K.F. by the back of his pants, lifted him off the ground, and carried him into the classroom.

34.   On or about March 8, 2021 in the morning, Defendant Douglas was responding to a call to address an issue involving K.F.  As Defendant Douglas was attempting to escort K.F. to her office, K.F. dropped to his knees.  When K.F. dropped to his knees, despite knowing this was not the proper procedure, Defendant Douglas continued to pull him by his arm or wrist down the hallway on his knees.

35.   A few minutes later, Defendant Hickman was asked to transport K.F. for or with Defendant Douglas.  Defendant Hickman picked up K.F. by the back of his pants, lifted him off the ground so that his arms and legs were extended, and carried him to Defendant Douglas' office.  He picked K.F. up in the same manner and put him down multiple times on this date.

36.   On or about March 9, 2021, Defendant Hickman sent a text to co-worker, Jerome Scott, mocking what he had done to this minor child.  He stated that on the previous day he performed the "superman Carry" on K.F. and that it "put a really good wedgy" that "took him a lot of try's to pull it all out of his crack 😊".   The "superman carry," as described by Defendant Hickman,

involved lifting K.F. off of the ground by holding the waist of the pants from behind with the student's feet off of the ground.

37.    Mr. Scott forwarded the text that he had received from Defendant Hickman to the EHES principal, Dr. Tiffany Scott.

38.    On or about March 10, 2021 in the afternoon, Defendant Hickman grabbed the loop on the top of K.F.'S backpack and pulled him backwards, causing K.F. to stumble back.

### Title IX Investigation

39.    On March 10, 2021, Dr. Tiffany Scott contacted David Meyers in the Employee Relations department, and an investigation (hereinafter, "Investigation") was subsequently commenced.

40.    The Investigation concluded that Defendant Hickman had lifted K.F. off of the ground by the back of his pants and carried him down the hall and that he had "used this tactic multiple times on March 8, 2021, when transporting student [K.F.] to the office."   The investigation also found that Defendant Hickman had "used the same practice on two prior occasions with the same student" and that it had "placed the student at potential physical and emotional risk."

41.    Defendant Hickman who is reported to be a former corrections officer, denied using pressure-point holds on K.F..  However, when pressed by investigators, Defendant Hickman stated that "the use of pressure points

should be in the training" provided by Defendant School Board even though most neck restraints are highly restricted if not banned outright in most major police departments.

42.     During the course of the investigation, Defendant Hickman reported that he received no training from School Board on the protocols of transporting student and de-escalation strategies.

43.     The Investigation concluded that Defendant Hickman had used "questionable restraints" and "unapproved methods to transport the student throughout campus which possibly jeopardized the safety and well-being of the student.

44.     The Investigation found that Defendant Hickman was guilty of violating School Board Policy and misconduct in office.

45.     The Investigation found that Defendant Hickman's conduct on March 8, 2021, had been witnessed by Defendant Douglas and that she failed to report this conduct to the administration on more than one occasion.   The Investigation reported, "Ms. Douglas had an opportunity to correct Mr. Hickman and at a minimum, report the inappropriate handling of a student by a coworker to administration.  She failed to do so."

46.     Furthermore, the Investigation found that on March 8, 2021, Defendant Douglas dragged K.F. by the arm down a hallway and that on February 23, 2021, Defendant Douglas had dragged K.F. by the arm up a flight

of stairs.

47.     During the course of the investigation, Defendant Douglas reported that she is the front line for behavioral calls but acknowledged that she does not have any "formal training".

48.     The Investigation concluded that Defendant Douglas had violated School Board policies and had engaged in Educator Misconduct.

49.     Though the Investigation recommended that Defendant Hickman be terminated for his conduct, Defendant School Board allowed him to resign from employment.

50.     As a result, when a prospective employer seeks employment verification from the Lake County School Board, there is no record that Defendant Hickman resigned in the middle of an active child abuse investigation of which he was the suspect.

51.     Though Defendant Douglas was also found to have violated School Board policies and engaged in Educator Misconduct in relation to the conduct perpetrated upon K.F., Defendant School Board did not terminate her employment.

52.     Since the assaults and batteries took place, Defendant School Board has not provided K.F. ongoing access to education free of the hostile environment these assaults created for him.

53.     Moreover, in the immediately aftermath of the assault, KEVIN

FINDLEY AND MARIAN FINDLEY requested alternative options to continue K.F.'s education. Defendant School Board did not provide K.F. any alternative options other than to return to the school where he was assaulted or travel further away from home to another school.

54.    As a result of these repeated assaults and batteries, K.F. has suffered and will continue to suffer damages, to include but not limited to physical harm, severe emotional and psychological harm, pain and suffering, and loss of enjoyment of life.

55.    Plaintiffs have retained the undersigned counsel and have agreed to pay reasonable attorneys' fees.

### FIRST CLAIM FOR RELIEF
**(Violation of 42 U.S.C. 1983 - Policy, Practice or Custom
Causing Constitutional Harm - Against Defendant School Board)**

56.    Plaintiffs re-allege and incorporate by reference all prior and subsequent paragraphs as if fully incorporated herein.

57.    During all relevant times to this complaint, Defendant School Board acted under color of state law.

58.    K.F. had a constitutional right not to be physically abused while in the care of Defendant School Board. Specifically, K.F. had a constitutional due process liberty interest to bodily integrity.

59.    The School Board had an affirmative constitutional duty to protect K.F.' s right to bodily integrity, including protection from physical abuse by

one its employees or agents.

60.   The School Board was at all relevant times a final policymaker, with authority to decide and/or adopt a course of action in response to conduct by Defendant Hickman.

61.   Upon information and belief, at all relevant times Defendant School Board had a longstanding policy, practice and/or custom of conducting lax investigations and being non-responsive to information that an employee or agent of School Board has a propensity towards the abuse and/or maltreatment of students.

62.   Defendant School Board further had a custom or policy of conducting lax investigations and being non-responsive to knowledge that Defendant Hickman was physically inappropriate with students.

63.   Defendant School Board acted with deliberate indifference in the gross failure to adequately report and investigate prior acts of misconduct by Hickman.

64.   The policy, practice or custom of being non-responsive to prior misconduct by Defendant Hickman was established with deliberate indifference to the consequences.

65.   As a result of the School Board's policy, practice or custom, K.F. was physically assaulted and battered by Defendant Hickman.

66.   The School Board violated K.F.' s constitutional right to

bodily integrity.

67.     The policy, practice or custom of the School Board was the moving force of the violation of K.F.'s constitutional rights.

68.     This has caused K.F. to suffer physical, emotional, and psychological harm, pain and suffering, and loss of enjoyment of life.

**SECOND CLAIM FOR RELIEF**
**(Violation of 42 U.S.C. §1983 - Deficient Training Practices**
**Causing Constitutional Harm - Against Defendant School Board)**

69.     Plaintiffs re-allege and incorporate by reference all prior and subsequent paragraphs as if fully incorporated herein.

70.     During all relevant times to this complaint, Defendant School Board acted under color of state law.

71.     The School Board failed to adequately supervise its employees, to include Defendant Hickman.

72.     Among other things, Hickman was allowed to repeatedly assault and batter K.F. on school property.

73.     Hickman's conduct was tantamount to arbitrary, egregious, and conscience-shocking behavior.

74.     Additionally, Defendant School Board's training practices regarding physical engagement with students were wholly inadequate. The School Board's supervision and training practices were not calculated or designed to protect children from physical abuse.

75.     Failure to adequately train and supervise with regard to the risks of assault upon students was an official policy of the School Board.

76.     The School Board was deliberately indifferent to the constitutional rights of children to bodily integrity in adopting its supervision and training practices.

77.     The School Board's failure to train or supervise reflects a deliberate or conscious choice.

78.     The foregoing deficiency in the School Board's training and supervision practices caused K.F. to be repeatedly physically assaulted by Hickman and suffer physical, emotional, and psychological harm, pain and suffering, and loss of enjoyment of life.

### THIRD CLAIM FOR RELIEF
### (Violation of Title IX:  Deliberate Indifference - Against Defendant School Board)

79.     Plaintiffs re-allege and incorporate by reference all prior and subsequent paragraphs as if fully incorporated herein.

80.     During all relevant times to this complaint, Defendant School Board acted under color of state law.

81.     At all relevant times, the education program or activity at EHES received federal financial assistance.

82.     At all relevant times, K.F. was enrolled at EHES, which is a school under the control and supervision of Defendant School Board.

83.     K.F. had a right to not be subject to harassment or abuse and a right to bodily integrity while he participated in that education program or activity.

84.     Due to Defendant School Board's lack of sufficient training on protocols of transporting students and de-escalation strategies, K.F. suffered severe, pervasive, and objectively offensive physical abuse and harassment as a result of the actions perpetrated by Defendants Hickman and Douglas.

85.     Hickman and Douglas' conduct was tantamount to arbitrary, egregious, and conscience-shocking behavior.

86.     At all times relevant, Defendant School Board had substantial control over the training and supervision of its employees regarding their interactions with students.

87.     At all times relevant, Defendant School Board had substantial control over Defendant Hickman and Defendant Douglas' specific job duties and abilities regarding the movement of students but failed to exercise such control due to its own inexplicable failures to ensure the safety of minor students in its care.

88.     During K.F.'s enrollment, Defendant School Board failed to prevent the known risk of physical and emotional mistreatment of minors and demonstrated deliberate indifference by

      a.  failing to adequately train faculty and staff on proper protocols and

techniques related to the physical movement of children,

    b.  failing to intervene and take any reasonable measure to stop or deter Defendant Hickman after the initial abusive and improper touching / transport of K.F., and

    c.  failing to intervene and take any reasonable measure to stop or deter Defendant Douglas after the initial abusive and improper touching / transport of K.F..

89. Upon information and belief, Defendant Douglas who was a dean at EHES had actual notice of Hickman's violation of rights as a result of knowing and/or witnessing his prior assaults of K.F..

90. The School Board had constructive notice of Hickman's violation of rights as a result of Defendant Douglas' actual knowledge.

91. Upon information and belief, Defendant School Board and Defendant Douglas each had authority to address the acts of abuse by Hickman and institute corrective measures.

92. Upon information and belief, after having constructive notice of Hickman's violation of K.F.'s rights, Defendant School Board demonstrated deliberate indifference to the danger of physical abuse to the children by failing to take prompt corrective measures.

93. As a result of this inaction, K.F. was physically assaulted and battered on separate and numerous occasions by both Defendants Hickman

and Douglas.

94.    Defendant School Board also demonstrated deliberate indifference by suggesting the physically victimized minor should be placed in alternative educational settings with high school students struggling with behavioral issues.

95.    K.F. has suffered physical, emotional, and psychological harm, pain and suffering, and loss of enjoyment of life as a result of Defendant School Board's notice of Defendant Hickman's physically abusive conduct and the risk he posed to children, and its inaction in response.

## FOURTH CLAIM FOR RELIEF
### (Violation of 42 U.S.C. §1983 - Against Defendant Douglas)

96.    Plaintiffs reallege and incorporate by reference all prior and subsequent paragraphs as if fully incorporated herein.

97.    At all relevant times, Defendant Douglas was acting under color of state law in her supervisory capacity over Defendant Hickman.

98.    K.F. had a constitutional due process liberty interest to bodily integrity. This interest included the right to be free from physical assault and battery by a state actor in public school.

99.    K.F.'s constitutional right to be free from physical assault and battery by a guardian in a public school is a clearly established right.

100.   Defendant Douglas acted with reckless and deliberate indifference

to the risks of physical abuse to the students at EHES.

101.   No reasonable similarly situated official would have exposed children to the risks of a physical assault by Defendant Hickman, as Defendant Douglas did in this case.

102.   As a result of Defendant Douglas' acts and omissions, K.F. was physically assaulted, which has caused him to suffer physical, emotional, and psychological harm, pain and suffering, and loss of enjoyment of life.

103.   By her acts and omissions, Defendant Douglas violated K.F.'s constitutional right to bodily integrity in public school.

## FIFTH CLAIM FOR RELIEF
### (Assault and Battery - Against Defendant Douglas and Hickman)

104.   Plaintiffs re-allege and incorporate by reference all prior and subsequent paragraphs as if fully incorporated herein.

105.   Defendant Douglas intentionally and in wanton disregard for the safety and well-being of K.F.:

a. committed an intentional, harmful, unwanted, and offensive contact upon K.F.'s person; and/or

b. acted in a manner meant to cause a reasonable person to suffer apprehension or fear of imminent harmful, unwanted, and offensive contact.

106.   Defendant Hickman intentionally and in wanton disregard for the

safety and well-being of K.F.:

    a.  committed an intentional, harmful, unwanted, and offensive contact upon K.F.'s person; and/or

    b.  acted in a manner meant to cause a reasonable person to suffer apprehension or fear of imminent harmful, unwanted, and offensive contact.

107.  As a direct and proximate result of the conduct of Defendant Douglas and Defendant Hickman, K.F. has suffered physical, emotional, and psychological harm, pain and suffering, and loss of enjoyment of life.

**SIXTH CLAIM FOR RELIEF**
**(Vicarious Liability - Against Defendant School Board)**

108.  Plaintiffs re-allege and incorporate by reference all prior and subsequent paragraphs as if fully incorporated herein.

109.  All conditions precedent to the bringing of this cause of action have been satisfied or waived, including the notice required by Florida Statute §768.28.

110.  Defendant Hickman was at all material times an employee of Defendant Board, and was operating under said employment.

111.  Defendant Douglas was at all material times an employee of Defendant Board, and was operating under said employment.

112.  Defendant School Board authorized Douglas and Hickman to

transport K.F. and other students to the office, and to have authority and control over those students' safety when that was occurring.

113.   Defendant Hickman and Defendant Douglas's acts of assault and battery were initiated and took place within the course, time, and scope of Douglas and Hickman's performance of their duties.  The acts occurred within the walls of the school building where Douglas and Hickman were required to perform their employment duties to EHES.

114.   Defendant Douglas and Hickman's actions occurred during normal working hours while they were there to supervise, assist, oversee, monitor, teach, or work with students attending school at EHES.

115.   Defendant Douglas and Hickman's contact and relationship with K.F. was, at all times, in furtherance of Defendant School Board's business interests.

116.   Defendant Douglas and Hickman's actions were committed in the actual or apparent course and scope of their employment.

117.   Defendant Douglas and Hickman's wrongful acts were committed while they were doing what their employment or agency contemplated.

118.   Defendant Douglas and Hickman were aided in accomplishing the tort upon K.F. by the existence of their agency relationship with Defendant School Board.   Specifically, Defendant Douglas and Hickman used the professional authority actually delegated to them by Defendant School Board

to make physical contact with K.F. under the auspice of transporting him to the office.  K.F. was in this vulnerable position with Defendant Douglas and Hickman precisely because of Douglas and Hickman agency relationship with Defendant School Board.

119.   The aforesaid actions and omissions by the Defendant Douglas and Hickman are imputed to Defendant School Board and their servants, employees, and/or agents pursuant to the doctrines of agency and/or *respondeat superior*.

120.   As a direct and proximate result of the conduct of Defendant School Board, K.F. has suffered physical, emotional, and psychological harm, pain and suffering, and loss of enjoyment of life.

## SEVENTH CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress - Against Defendant Hickman)

121.   Plaintiffs re-allege and incorporate by reference all prior and subsequent paragraphs as if fully incorporated herein.

122.   In committing the assault and battery material to this complaint, Defendant Hickman engaged in extreme and outrageous conduct that transcended the bounds of human decency.

123.   Defendant Hickman intentionally and recklessly caused Plaintiff to experience severe physical injury and emotional distress.

124.   Defendant Hickman knew or should have known that the assault

and battery committed against K.F. would cause emotional distress.

125.   As a direct and proximate result of the conduct of Defendant Hickman, K.F. has suffered emotional and psychological harm, pain and suffering, and loss of enjoyment of life.

## EIGHTH CLAIM FOR RELIEF
### (Negligence - Against Defendant School Board)

126.   Plaintiffs re-allege and incorporate by reference all prior and subsequent paragraphs as if fully incorporated herein.

127.   All conditions precedent to the bringing of this cause of action have been satisfied or waived, including the notice required by Florida Statute §768.28.

128.   At all material times, Plaintiff K.F. was a student at EHES, which is under the supervision, direction and control of Defendant, School Board of Lake County.

129.   Defendant School Board owed a duty to protect the safety of the minors who attended Lake County Public Schools and were entrusted in its care from foreseeable harm on school grounds and during school related activities.

130.   At all material times, Defendant School Board owed a duty to use reasonable care to protect the safety, care, well-being and health of minor K.F. while he was under its care and custody. These duties encompassed the

protection and supervision of K.F., and otherwise providing a safe environment for K.F. while on school premises.

131.  At all material times, Defendant School Board had a duty to reasonably supervise the activities of Defendants Douglas and Hickman and as an employee of School Board of Lake County, as well as investigate and evaluate their background, character fitness, and suitability to have access to children in the School Board's care.

132.  At all material times, Defendant School Board had a duty to take steps to ensure Defendants Douglas and Hickman were safe around students while at the school, and to institute disciplinary measures, as well as training, to deter further misconduct if it became known.

133.  Upon information and belief, Defendant School Board breached its duty in hiring, training, and/or supervising Defendant Douglas in the following respects:

     a.  Defendant School Board failed to properly train Defendant Douglas regarding interactions with children; and/or

     b.  Defendant School Board failed to properly supervise Defendant Douglas.

134.  Upon information and belief, Defendant School Board breached its duty in hiring, training, and/or supervising Defendant Hickman in the following respects:

    a. Defendant School Board failed to properly train Defendant Hickman regarding interactions with children;

    b. Defendant School Board failed to properly supervise Defendant Hickman; and/or

    c. Defendant School Board failed to intervene, deter, or discipline when there was evidence of prior incidents of harmful conduct perpetrated by Defendant Hickman upon K.F..

135. Defendant School Board's conduct in allowing Defendant Hickman to have access to and supervision over children in the Lake County schools was unreasonable under the circumstances and shows a reckless disregard of the safety and welfare of the minors in whose care Defendant School Board was entrusted.

136. Discipline and consequences to employees that mistreat or abuse students should be a top priority to any School Board because

137. As a direct and proximate result of Defendant School Board's acts and/or omissions, Plaintiff K.F. has suffered physical, emotional, and psychological harm, pain and suffering, and loss of enjoyment of life.

## NINTH CLAIM FOR RELIEF
### (Loss of Consortium - Against Defendant School Board)

100. Plaintiffs re-allege and incorporate by reference all prior and subsequent paragraphs as if fully incorporated herein.

101.   As a result of Defendant School Board's violation of K.F.'s common law and constitutional rights, KEVIN FINDLEY and MARIAN FINDLEY have suffered and will suffer damages, including loss of comfort, companionship and society, and pecuniary losses, consisting of, without limitation, care and treatment of K.F. and loss of earnings arising therefrom.

102.   Defendant School Board's acts and omissions were the direct and proximate cause of K.F.'s loss of comfort, companionship and society, pecuniary losses, and loss of earnings.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, KEVIN FINDLEY and MARIAN FINDLEY, individually, demand compensatory damages for loss of consortium, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues triable as a matter of right.


**DATED: April 18, 2023**            /s/ *Basyle J. Tchividjian*
                                     BASYLE J. TCHIVIJDIAN
                                     FLORIDA BAR NO.: 0985007
                                     **BOZ LAW, P.A.**
                                     112 W. New York Ave., Suite 207
                                     DeLand, FL 32720
                                     (386) 682-5540
                                     boz@bozlawpa.com

*/s/ Lisa D. Haba* _____
LISA D. HABA
FLORIDA BAR NO.: 0077535
**THE HABA LAW FIRM, P.A.**
1220 Commerce Park Dr., Suite 207
Longwood, FL 32779
(844) 422-2529
lisahaba@habalaw.com

*Attorneys for Plaintiff*